**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 21-20211 (JJT) |
| | ) | | |
| CE ELECTRICAL CONTRACTORS, LLC, | ) | CHAPTER | 11 |
| DEBTOR. | ) | | |
| | ) | RE: ECF NO. | 441 |

## MEMORANDUM OF DECISION
## ON CHAPTER 11 PLAN INJUNCTION

The issue(s) herein were briefed and fully heard at a proceeding before this Court on Monday, March 28, 2022. In connection with the proposed confirmation of CE Electrical Contractors, LLC's (the "Debtor") Fifth Amended Plan (ECF No. 441, the "Plan"), the Court heard evidence and arguments of the parties on whether the Plan's proposed injunctions to shelter the Debtor's principal, Paul Calafiore, from guarantor creditors would be approved. *See* Plan, Art. X, pp. 22–23, Sec. C (the "Proposed Injunctions"). During the Plan's 68-month term, Mr. Calafiore, the Debtor's sole shareholder, officer, and operations manager, proposes to contribute $50,000[1] from family resources to the Debtor to facilitate confirmation and Plan feasibility and another $50,000 from uncertain future resources in or about three years.[2]

In surveying the financial profile of this case, it appears that the Debtor likely faces at least $20,000 in accrued operating administrative expenses and an unspecified amount of professional fees to address at confirmation. The Debtor's cash position and net income to fund confirmation expenses and sustain operations is admittedly thin after years of operating losses. In

---

[1] The Debtor has placed the first $50,000 contribution in a trust account in advance of the hearing on confirmation of the Plan.
[2] The Court's decision herein does not relate to the Court's prior approval of temporary injunctions in an Adversary Proceeding, against certain active guarantor creditors, founded upon stipulations or default judgments. This Adversary Proceeding is captioned as *CE Electrical Contractors, LLC v. Global Merchant Cash, Inc., et al.*, Case No. 21-02009.

addition to more than $300,000 in priority claims and significant, varied secured claims, the Debtor's unsecured creditor claims total an estimated $11 million.[3] Certain of these creditors hold nearly $3 million in guaranties for Mr. Calafiore (the "Guarantor Creditors"). Although he has modest assets estimated at less than $100,000 and significant creditor exposures, Mr. Calafiore heretofore has refrained from seeking individual bankruptcy relief.

While hardly certain, the proposed dividend to unsecured creditors under the Plan is estimated at 5% over 68 months (or approximately 5.67 years). With the exception of those few Guarantor Creditors who have appeared and negotiated a forbearance injunction in the referenced Adversary Proceeding, neither the Plan nor any mechanism outside of the Plan proposes to pay any incremental dividend to the Guarantor Creditors.

The Plan is scheduled for a confirmation hearing on Wednesday, March 30, 2022 at 1:00 p.m. While the Court heard evidence herein concerning the feasibility of the Plan in connection with the Debtor's efforts to demonstrate its likely confirmability, a final decision on that issue is reserved by the Court for the confirmation hearing. At this juncture, the Court can nonetheless conclude that Plan feasibility is, at best, fragile as the Debtor has yet to fully implement the benchmarks of its business plan for its electrical contracting business, which would palpably enhance operations and net revenues and end a protracted course of financial losses before and during the Chapter 11.

Although the Court acknowledges the progress in the Debtor's financial rehabilitation, and the resilience of Mr. Calafiore, it must not overlook the fact that the requested injunction seeks extraordinary relief. Although characterized as a temporary injunction, its terms and effect are akin to a permanent injunction. While the federal courts have generally recognized the

---

[3] It appears from a review of the Proof of Claim register that Mr. Calafiore has filed no proofs of claim for indemnity or otherwise.

existence of such authority in the bankruptcy courts, through various admonitions, cautious standards, and reserve, they have consistently urged the sparing use of such injunctive authority in unusual circumstances to shield non-debtors.

On the basis of the record of this proceeding, and considering the totality of the circumstances and equities presented by the evidence, the Court must respectfully decline to approve the Plan's Proposed Injunctions. *See* Plan, Art. X, pp. 22–23, Sec. C.

## I.    STANDARD FOR INJUNCTIVE RELIEF

In connection with the confirmation of a Chapter 11 plan, the Bankruptcy Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105. This Court, sitting as a federal court, is also empowered to act within the parameters of Circuit court authority and Fed. R. Civ. P. 65 addressing injunctions and restraining orders.

The traditional injunctive standards in this context weigh: (1) that there be danger of imminent irreparable harm to the debtor's ability to reorganize; (2) that there is a reasonable likelihood of a successful reorganization; (3) that the balance of relative harm between the debtor and creditor tips in favor of the debtor; and, (4) that consideration of the public's interest in a successful bankruptcy with competing societal values balances in favor of the debtor. *In re United Health Care Org.*, 210 B.R. 228, 233 (S.D.N.Y. 1997).

The Sixth Circuit has held that, under certain circumstances, a bankruptcy court may enjoin a non-consenting creditor's claim against a non-debtor to facilitate a Chapter 11 plan of reorganization. *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002). In *Dow Corning*, the court distilled and articulated the features relied upon in the Fourth Circuit's decision in *A.H. Robins* and the Second Circuit's decision in *Drexel Burnham* to support injunctive relief in a

3

Chapter 11 plan under 11 U.S.C. § 105 and related authorities. *Id.* at 656–61; *see also In re A.H. Robins Co., Inc.*, 880 F.2d 694 (4th Cir. 1989); *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285 (2d Cir. 1992).

These factors guide the majority view and analysis of courts in this Circuit in their assessment of the appropriateness of a non-debtor plan injunction.[4] These factors include:

> (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full and; (7) The bankruptcy court made a record of specific factual findings that support its conclusions.

*Dow Corning*, 280 F.3d at 658.

## II. DISCUSSION

Whether this Court is guided by the traditional standards for injunctive relief under the Federal Rules of Civil Procedure or those distilled from cases in this Circuit, and beyond which have endeavored to forge the considered parameters of 11 U.S.C. § 105(a), the Debtor cannot justify such extraordinary relief as that contained in the Proposed Injunctions.

Here, there is no palpable showing of a danger of imminent or irreparable harm. In fact, the Debtor affirms it can proceed without any such injunction. *See* Plan, Art. X, p. 23, Sec. C ("In the event that the Court determines that the injunction will not issue, then the Debtor will

---

[4] This Court recognizes the controversies over the jurisdiction, appropriateness, and scope of Chapter 11 plan injunctions in various Circuits.

request confirmation of the Plan but without the temporary injunction."). Similarly, there has been no showing that litigation against the guarantor (which may not be brought or may be resolved in light of the guarantor's limited resources and individual bankruptcy prospects) would have an adverse effect on the reorganization or estate of the Debtor. As far as the balance of the aforesaid tests, although the Debtor's resolute prospects for a successful reorganization are fragile and uncertain, the harm to contractual rights of the Guarantor Creditors tips in their favor. Considerations of the public's interest do not loom large in this matter as viable alternatives exist for Mr. Calafiore and the core business of the Debtor will likely survive in some appropriately scaled form. The exigencies, complexities, and unusual or compelling circumstances which have supported comparable relief in myriad Chapter 11 cases in this Circuit simply do not exist here.

In assessing the record and concluding that the Debtor is unable to support its request for injunctive relief, the Court heavily weighed the following factors:

1) The scenario of a principal who shoulders business operations, funds a plan, and has guarantor exposure in a debtor's Chapter 11 is a familiar one. It is neither extraordinary, complex, unusual nor otherwise deserving of the issuance of rarified injunctive relief.

2) The injunctive relief requested significantly impacts the independent contractual rights of the Guarantor Creditors of Mr. Calafiore without any meaningful provision for an incremental recovery or a process for the scrutiny of his assets or their equitable distribution among his creditors.

3) Even the "potential" 5% dividend to unsecured creditors that the Debtor's Plan might afford the Guarantor Creditors here is deminimus and uncertain.

4) As unequivocally stated in the Debtor's Plan, *see* Plan, Art. X, p. 23, and at the hearing, Mr. Calafiore's contribution to the Plan is not predicated upon obtaining injunctive

relief. In essence, it is not essential to the Chapter 11 reorganization of the Debtor. His potential distraction from the Debtor's business or his inability to defend against such claim has other remedies.

5) Notwithstanding contrary assurances on the record to revise its parameters, the scope of the proposed injunction is unduly broad and lacks specificity in identification of the excepted and enjoined parties and the scope of its prohibitions.[5] The relief mechanism is likewise unclear and further fails to address the consequences of a Plan default, case conversion, dismissal, or any material asset dissipation or accretion by Mr. Calafiore over the years.[6]

6) Further, in assessing the aforesaid *Dow Corning* factors, the Court concludes that:

   a. the identity of interests between the Debtor and Mr. Calafiore is close, but will not necessarily deplete the Chapter 11 estate if he is sued;

   b. the contribution of funds made by Mr. Calafiore to the reorganized Debtor is modest and, in part, uncertain;

---

[5] The following is a partial excerpt from the section of the Debtor's Plan addressing the Proposed Injunctions:

"During the Plan term, the Confirmation Order will temporarily restrain creditors, party-in-interest or any third party from pursuing the Paul Calafiore (the "Injunction Beneficiary") for collection of all or any portion of their Claims or any Claim that could have or should have been brought against the Debtor. The temporary injunction shall restrain Claims against the Injunction Beneficiary and/or his real and personal property interests but only if he contributes the new value monies and acquires an interest in the Reorganized Debtor.

Claims included within the scope of the injunction are those that arose prepetition or that arise up through the Effective Date. The injunction shall terminate upon the conclusion of Plan payments to general unsecured creditors or at such other date as the Court, in the Confirmation Order, may direct.

The injunction shall apply to any lawsuit brought against the Injunction Beneficiary pre-petition or that could have been brought pre-petition.

Should the Debtor be in violation of the Plan's payment terms and if that violation remains uncured for a period of 30 days after receipt by the Debtor of written notice (with verification of receipt of the notice by the Debtor) from any unsecured party directly affected by such violation, the affected party may apply to this Court to dissolve the temporary injunction but only as to the affected party. As the issuing court, the Bankruptcy Court shall have exclusive jurisdiction to extinguish or modify the temporary injunction. The Debtor may move to continue or to reinstate the temporary injunction." Plan, Art. X, p. 23, Sec. C.

[6] Although the Proposed Injunctions do include a provision that prohibits Mr. Calafiore from selling any assets he owns of a value greater than $25,000 without giving notice to the two senior secured banks within 60 days after the Plan's Effective Date, this provision, and similar notice procedures in the Proposed Injunctions, does not overcome this Court's finding that the evidence does not support a showing of a danger of imminent or irreparable harm.

    c. the Proofs of Claims Register confirms that Mr. Calafiore has not filed any indemnification proofs of claim against the Debtor that might adversely impact the Chapter 11 estate;

    d. there is no indication that the Guarantor Creditors affirmatively or overwhelmingly support the Plan or its injunction;

    e. the Plan provides no distinctive, meaningful, or differential method to compensate affected Guarantor Creditors, or to redress such creditors who object to the Proposed Injunction; and

    f. the measuring of the totality of the facts, circumstances, and equities on each side of this issue do not support such extraordinary relief.

7) Further, it is a reasonable proposition that the Debtor's estate, Mr. Calafiore, and their creditors may be better served by joint or related-party plans of reorganization.

Accordingly, in balancing the evidence in the record, the Court concludes that the Debtor has failed to meet its burden of proof to support such extraordinary relief and, therefore, the Debtor's request for injunctive relief in favor of Mr. Calafiore contained in the Plan is inappropriate and must be DENIED.

**IT IS SO ORDERED** at Hartford, Connecticut this 29th day of March 2022.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut